**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| REX DOUGLAS REECE, JR. | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-12-693 |
| WAYNE SLATE, et al. | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM OPINION**

Plaintiff Rex Douglas Reece, Jr. ("Reece") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983. Defendants Cecil, CMS, Getachew, Clem, Quil, Matera, Larid and Slate ("Medical Defendants"), by their attorneys move to dismiss or, in the alternative for summary judgment (ECF No. 17). Counsel for Kathleen Green ("Green") moves separately to dismiss or for summary judgment (ECF No. 21). After review of the papers, exhibits, and applicable law, the court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, both motions, construed as Motions for Summary Judgment (ECF No. 17 and 21) will be GRANTED and judgment will be ENTERED in favor of the Medical Defendants and Defendant Green.

**Background**

Reece, an inmate at Eastern Correctional Institution (ECI) alleges on January 23, 2012, he broke his right foot when he fell. He states he was leaving his assigned top bunk and stepped on a plastic chair, provided by the prison for purposes of accessing the top bunk, when the legs of the chair collapsed, causing him to fall. He claims when the tier officer was made aware of his injury, the officer called medical personnel who responded they would look at Reece when

they could. Reece was seen at 7:00 p.m.[1] by medical staff, but was not given an x-ray and was sent back to his cell without treatment. ECF No. 1 at p. 1.

On January 25, 2012, Reece was seen by a Physician's Assistant (P.A.) who sent him to the prison infirmary for an x-ray. The x-ray revealed Reece's right foot was broken and Reece was seen by a doctor who explained that he needed to be seen by a surgeon. His foot was wrapped in a half cast and he was told he would receive pain medication. Reece claims that two days later he was given 600 mg of ibuprofen, but it did "absolutely nothing" to relieve the pain. ECF No. 1 at p. 2.

On February 13, 2012, Reece states he was taken to a hospital where he received an orthopedic shoe. The doctor explained to Reece that after returning to prison he would be fitted for a walking boot or brace. *Id.* Reece claims he had not received the prescribed walking boot as of the date of the Complaint, February 26, 2012, but admits he had received it on or before March 28, 2012, the date he filed a Memorandum in Support of his Complaint. ECF No. 5 at p. 2. Reece maintains, however, that he has never received the pain medication Ultram, which was prescribed by the orthopedic surgeon. ECF No. 8. He states he learned he had been prescribed Ultram on March 27, 2012 after he returned to see the surgeon for a follow-up visit. He claims when he asked Nurse Laird[2] about the prescription she told him a prescription written by an outside doctor could not be honored until Reece was seen by a physician at ECI. *Id*.

Reece's claim against Defendant Green is that she is responsible for failing to provide ladders to access upper bunks. He alleges the chair provided was defective and caused his injury when it collapsed under him. ECF No. 6 and 16.

---

[1] Reece does not provide the approximate time of his fall. ECF No. 1 at p. 1.

[2] Based on her response, Reece added Laird as a Defendant in this action.

Medical Defendants allege Reece received appropriate treatment for his slightly displaced fracture of the fifth metatarsal on his right foot. He was seen by a nurse on the day of his injury. Upon examination, Reece's foot was tender, painful with movement but with palpable distal pulses and no discoloration. His foot was swollen and was painful with weight bearing. Reece was given ice, cool compresses, and put on bed rest with instructions to elevate the foot with ice until he could be seen by a health care provider. A referral was written and the nurse issued an order excusing Reece from work, placing him on bed rest, and ordering no courtyard or gym, in-cell feeding, and ice for two days twice per shift. ECF No. 17 at Attachment 1, ¶ 8.

Two days after his injury Reece was seen by Physician's Assistant Jessica Cecil. Cecil ordered an x-ray of Reece's foot which revealed a "transverse fracture of the fifth metatarsal on the right foot, with slight angulation seen." *Id*. at ¶ 9. At the time of Cecil's examination, Reece was wearing a splint and noted swelling and tenderness in his foot as well as discoloration around the toes. Additionally, she noted that Reece needed an orthopedic consult, but that Reece had good blood flow to his foot as well as normal pulses. The fracture was considered to be a closed, acute fracture which normally heals on its own. Cecil wrote an order for Reece to receive ice twice per day for a week. *Id*.

On the same day of Cecil's assessment, Reece was seen by Dr. Inzerillo, who noted that Reece's foot was swollen and discolored. Dr. Inzerillo provided Reece with a splint and crutches and advised Cecil to have Reece sent out for permanent casting. In addition, he ordered a bottom bunk for Reece and that he be fed in his cell to minimize risk of further injury. *Id*. at ¶ 10.

On February 2, 2012, Reece was given a comprehensive health assessment by Dr. Lino Quilo, who noted that Reece had an acute fracture and was in no apparent distress. The pulses in

his foot were normal, suggesting good blood flow to the area of the fracture, and there was no joint deformity, heat, or swelling observed. *Id*. at ¶ 14.

On February 14, 2012, Reece was seen by orthopedist Dr. Krishnaswamy who noted that Reece had a slightly displaced, comminuted spiral fracture of the fifth metatarsal which would take four to six months to heal. Reece was put in a short-leg splint and Dr. Krishnaswamy noted that Reece could be treated with a short-leg walking brace with weight bearing as tolerated, gradually becoming less dependent on crutches. A repeat x-ray in four to six weeks was recommended. *Id*. at ¶ 16.

Based on Dr. Krishnaswamy's recommendation, on February 15, 2012, Cecil placed a request for follow up x-rays of Reece's foot for March 14, 2012. The following day, Cecil took note of the other findings and indicated she would let the orthopedist transition Reece to walking boot with weight bearing. *Id*. at ¶ 17. On February 27, 2012, Cecil spoke with Dr. Krishnaswamy in order to clarify his order regarding progression to weight bearing. At that time Dr. Krishnaswamy indicated that Reece should remain in a fiberglass splint with crutches until a short-leg walking brace or cam walker/boot came in. He further stated that Reece could start to walk with only one crutch on the good side and then go to full weight bearing when he received the cam walker. Dr. Krishnaswamy noted that Reece did not need surgery or physical therapy. *Id*. at ¶ 19.

Reece was again seen on February 28, 2012, by Cecil because a boot of the type ordered by Dr. Krishnaswamy was in stock. The plan was to show Reece how to put the boot on and how to transition to weight-bearing status. At that time Reece complained that he was in constant pain, but admitted he was not taking the prescribed Motrin on a regular basis. Cecil explained the role of the anti-inflammatory medication in pain management, decreased his

dosage of Ultram to an evening dose at bedtime, and ended the Ultram prescription at the end of the following week. Reece did well with the walking boot in the office, but was put on bedrest until 7:00 a.m. until cleared, allowed partial weight bearing with one crutch and the walking boot. *Id*. at ¶ 20.

On March 27, 2012, Reece was sent to Bon Secours Hospital for follow up with the orthopedist. The x-ray results from that appointment showed partial healing along the fracture with no new abnormality. On April 24, 2012, another x-ray showed a healing spiral fracture of the right, fifth metatarsal in good alignment. *Id*. at ¶ 21. The following day Dr. Matera examined Reece and noted he was healing well and had no new complaints, no soft tissue swelling, and his foot was non-tender. At that time Reece was ambulatory and wearing a short walking cast with stable coordination and gait. Reece told Dr. Matera that he removed his boot at night to sleep and that he had walked in his cell without the brace for two weeks to test the foot. He was advised against this practice and to continue to comply with the orthopedist's orders. *Id*. at ¶ 22. Reece was given a medical assignment indicating no weight lifting until cleared by the orthopedist and his bottom bunk assignment was continued for three months. Additionally, cold compresses were ordered twice a day for twenty minutes for one week as needed. *Id*. at ¶ 23. Medical Defendants further state that Reece was given prescription strength Motrin for pain and was later provided with Ultram twice a day for thirty days from February 6, 2012, through March 6, 2012. He was provided Motrin to be taken at night. *Id*. at ¶ 7.

Defendant Green asserts she has no authority to make decisions or judgments pertaining to the medical diagnoses or treatment provided to inmates. ECF No. 21 at Ex. 1. She adds that all medical decisions are made by medical professionals and she does not order or direct them to provide specific treatment. *Id*. Defendant Green does not address Reece's claim that failing to

provide a ladder to access the top bunk was negligent and led to his injury.  *See* ECF No. 6 and 16.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

<u>Medical Claim</u>

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"

*Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

In the instant case Reece was seen by a nurse on the day his foot was injured.[3] She put a splint on his foot and arranged for an x-ray as well as further evaluation. Two days later, Reece was seen by P.A. Cecil and Dr. Inzarillo. Reece asserts that he was forced to wait four days for any pain relief medication to be provided. ECF No. 25 at p. 2; Attachment 1, p. 6. The medical record he references indicates a start date of January 25, 2012, for Motrin, but also reflects a date of January 27, 2012, as the date received. *Id*. at Attachment 1, p. 6. Assuming Reece did not receive Motrin until January 27, 2012, the failure to provide Motrin for four days is not deliberate indifference to a serious medical need in light of the other measures that were provided. In addition to the splint, the undisputed facts establish Reece was provided crutches, given a lower bunk assignment, excused from work, allowed to take his meals in his cell, and given an order for ice. Thus, care was provided for Reece's fractured foot and measures were taken to insure the injury was not worsened and that Reece would not be required to move about on an injured foot.

The asserted delay in providing Reece with the walking boot is also not evidence of deliberate indifference, given that he was receiving treatment for his foot before receiving the

---

[3] For purposes of this analysis the court assumes a broken bone in the foot is a serious medical condition; however, the court also notes that Reece was told by the orthopedist that his injury would heal well but would take approximately 4 to 6 months to heal. ECF No. 17 at Att. 2, p. 47.

walking boot. Additionally, it appears from the records submitted that the orthopedist provided for gradual weight bearing on the injured foot and did not intend for Reece to have the walking boot right away. ECF No. 17 at Att. 2, pp. 46 – 47. Thus, the delay in providing a walking boot did not cause Reece any harm.

Reece also asserts that, prior to the filing of the instant action, he was treated only by registered nurses and physician's assistants who refused to provide him with adequate pain medication or a medically prescribed walking boot. ECF No. 25 at pp. 4 – 6. He states the medical staff treating him were not qualified to treat his injury and undermined the orders written by the orthopedist. *Id*. at p. 5. He states he was not provided the Ultram he was prescribed because a physician's assistant refused to provide it to him. *Id*. Medical Defendants admit that outside physician's prescriptions must be reviewed by one of the doctors employed at the prison before the medication can be dispensed. Reece admits he was provided Ultram two weeks after the date of his injury. His disagreement with the care provided and his assertions that medical staff were not qualified to treat his injury are simply not a basis for a constitutional claim. There is no evidence that Medical Defendants exhibited a callous disregard for Reece's injured foot and they are entitled to summary judgment in their favor on the Eighth Amendment claim.

## Negligence Claims

To the extent Reece raises a claim of medical malpractice[4] against Medical Defendants and a claim of negligence against Defendant Green,[5] those claims are based on state law. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D.

---

[4] There is no evidence that Reece has complied with the Health Claims Arbitration Act regarding any medical malpractice claims. *See* Md. Code Ann., Cts. & Jud. Proc. §3-2A-02.

[5] There is no evidence that Reece has complied with the Maryland Tort Claims Act regarding his claim that providing a chair instead of a ladder for accessing the upper bunk was a failure to exercise proper care. *See* Md. Code Ann., State Gov't. §12-101, *et seq*.

Md. 1986) (Mere negligence or malpractice does not rise to a constitutional level). A state law claim raised in a complaint with a federal claim may be heard by this court by virtue of its supplemental jurisdiction. However, this court may decline to exercise supplemental jurisdiction over state law claims where the federal claim is dismissed. *See* 28 U.S.C. § 1367(c). When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Thus, the negligence claims raised will be dismissed without prejudice.

A separate Order follows.

Date:  September 5, 2012                             /s/
                                          DEBORAH K. CHASANOW
                                          United States District Judge